C. Edward **KNAPP**, Regional Director of the Eighteenth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 953, AFL–CIO, Respondent.

No. C–64–94.

United States District Court
W. D. Wisconsin.

Dec. 16, 1964.

Eugene G. Goslee, Attorney, N.L.R.B., Minneapolis, Minn., for plaintiff.

Richard M. Goldberg, of Goldberg, Previant & Uelmen, Milwaukee, Wis., for respondent.

TEHAN, District Judge.

The petitioner, C. Edward Knapp, Regional Director of the Eighteenth Region of the National Labor Relations Board (herein called the Board), filed a petition for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act as amended (herein called the Act), alleging that there is reasonable cause to believe that the International Brotherhood of Electrical Workers, Local 953, AFL-CIO (herein called Local 953) has engaged in and is engaging in acts and conduct in violation of Section 8(b) (7) (B) of the Act. An answer to the petition has been filed by Local 953. On November 9, 1964, a hearing was had on the issues raised by the petition and answer and testimony was taken and exhibits received in evidence. Oral argument was had and post-hearing briefs and proposed findings of fact and conclusions of law submitted. The court has considered the entire record and being fully advised makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT.

1. Petitioner is Regional Director of the Eighteenth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about October 27, 1964, Erickson Electric Company (herein called Erickson), pursuant to the provisions of the Act, filed a charge with the Board alleging, inter alia, that the International Brotherhood of Electrical Workers, Local 953, AFL-CIO (herein called Local 953), has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (7), subparagraph (B) of the Act.

3. The aforesaid charge was referred to petitioner as Regional Director of the Eighteenth Region of the Board.

4. Local 953, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

5. Local 953 maintains its principal office at Eau Claire, Wisconsin, and at all times material herein has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

6. At all times material herein, Glenn Peterson and Thomas Haley, have been, respectively, the business manager and assistant business manager of respondent, acting in its behalf, and have been, and are now, agents of respondent within the meaning of Sections 2(13), 8(b), and 10(*l*) of the Act.

7. Erickson is an individual proprietorship, owned and operated by Melvin Erickson, who maintains his principal office at Prairie Farm, Wisconsin, where he is engaged in business as an electrical contractor. In the operation of his business during the period from September 1, 1963 to August 31, 1964, Erickson received goods and materials from sources situated outside the State of Wisconsin valued in excess of $61,000, and is engaged in commerce within the meaning of the Act.

8. Local 953 is not currently certified as the representative of any of Erickson's employees.

9. In the Fall of 1962, Local 953, through its representatives, asked Erickson to sign a union contract with it and Erickson refused. Also in the Fall of 1962, Local 953 picketed the site of the construction of Dunn County Jail where Erickson was engaged in the project. Initially, and for a period of about four

days, the picket signs bore the legend that Erickson does not employ members of the Electrician Union Local No. 953. Thereafter, the legend was changed to read "Our only dispute is with the substandard wages and conditions of the Erickson Electric Co.".

10. In late November or early December, 1963, Mr. Haley, a representative of Local 953 had a conversation with the administrator of the Memorial Hospital Board prior to the letting of the bid for construction of the Memorial Hospital, in Menomonie, Wisconsin; Mr. Haley asked if Erickson Electric, a non-union contractor, were successful in making the low bid, whether he would be awarded the contract. The administrator then informed Mr. Haley that although he couldn't answer he assumed that the low bidder on public works would be given the contract.

11. About May 1, 1964, Erickson commenced his work at the Memorial Hospital job site at Menomonie. Three full-time employees were employed by Erickson on the project.

12. Erickson pays his employees for their work on the Memorial Hospital project as follows: An apprentice receives $2.00 an hour and time and one-half for some of the time that he works over eight hours or over forty hours. A journeyman receives $4.00 for work on the Menomonie project and similarly when he works over eight hours or over forty hours, he receives time and one-half on some occasions. Erickson pays his employees no other benefits for either journeymen or apprentices on the Memorial Hospital project.

13. In June, 1964, Erickson appeared at a Joint Apprenticeship Committee meeting at the time of indenturing of his apprentice and stated to the Committee that he was going to pay his apprentice $2.00 an hour which is one-half of his journeyman's scale of $4.00 per hour. The minutes of the meeting were received by Local 953. Thus the Union had knowledge of the wages paid by Erickson. In

addition, in August of 1963, a former employee of Erickson applied for membership in Local 953 and told the Local he had been paid $1.50 per hour by Erickson.

14. Local 953's contract with electrical contractors in the Eau Claire area provide for the payment of $2.12½ per hour for apprentices doing wiring work, double time for work on new construction that is not performed between the hours of 8:00 A.M. and 4:30 P.M., and a 1% contribution for pension benefits, and $4.25 an hour for journeymen. Thus the wages and benefits paid by Erickson are less than the union standard.

15. Sometime in July, 1964, Mr. Erickson was approached by representatives of Local 953 (Glenn Peterson and Howard Brenholt) and asked whether he would be interested in entering into an agreement with Local 953. Erickson replied that he hadn't given it much thought, that maybe he would some day but not at this time. He was then asked if it would be all right if Mr. Peterson came back sometime and Erickson said it would be "Okay". Thereafter, a representative of Local 953 returned on two separate occasions to see if Erickson had made up his mind but Erickson remained undecided. In the first week in September, 1964, a representative again talked to Erickson and this time Erickson told him that he had made up his mind not to join since the job was half finished and he would rather wait until it was completed. A week later the representative returned, asked Erickson if he had changed his mind and received the reply that he had not.

All of these conversations took place at the job site of the Memorial Hospital in Menomonie, Wisconsin. Although Local 953's witness and Erickson gave different versions of the content of the conversations, we find that there were no threats made or implied that the Union would take coercive action if he did not sign.

16. On September 21, 1964, approximately two weeks later, the Union com-

menced picketing with signs bearing the legend on one side "Our only dispute is with the substandard benefits paid by Erickson" and on the other side, "Employees of Erickson Electric receive substandard benefits."

17. After the picketing started, Erickson asked one of Local 953's representatives how long it was to go on and Peterson replied "Until the job is done. We have a right to advertise."

At a meeting in the hospital administrator's office, when asked why the Union was picketing, the union representative replied that it was due to Erickson's substandard benefits.

Also subsequent to the commencement of the picketing, in a telephone conversation with Peterson, an agent of the Union informed counsel for Erickson that the picketing was advertising and that any other questions could be answered by Local 953's attorneys in Milwaukee.

None of these conversations are susceptible of the inference that the Local was demanding a contract from Erickson but are consistent with the advertisement that Erickson was paying substandard benefits.

18. The petitioner herein has adduced no evidence that at any time after the last inquiry about a contract, two weeks before the picketing began, the union ever again asked for a contract, told anyone it wanted a contract, threatened that the picketing would go on until it received a contract, attempted to solicit employees of Erickson for membership or by the acts of any of its repesentatives implied that the object of the picketing was to force or induce Erickson to sign a contract.

19. On September 24, 1964, Erickson filed a petition for certification of representation pursuant to Section 9(c) (1) of the Act. Local 953, by its attorneys, in a letter of October 6, 1964, advised the National Labor Relations Board as follows:

"It is the position of Local Union 953, IBEW, that no question of representation exists and no facts have occurred warranting the conduct of an election under Section 8(b) (7). The union makes no claim of interest amongst the employees of Erickson Electric and has not picketed for recognition or to obtain a contract. Local Union 953's picketing has been to advertise the substandard working conditions of Erickson Electric's employees and has in no way conflicted with any Board rules so as to convert its picketing from such purpose. We therefore maintain no election should be conducted."

20. On October 13, 1964, the Regional Director of the Eighteenth Region of the National Labor Relations Board conducted an election among the employees of Erickson, in which all three employees voted against representation by Local 953, and on or about October 26, 1964, the petitioner, acting for and on behalf of the Board, pursuant to provisions of Section 9(c) of the Act, duly issued his certification of the results of election, certifying that a majority of the valid votes in the aforesaid election had not been cast for Local 953 and that Local 953 is not the representative of Erickson's employees.

21. No charge has been filed with the Board under Section 8(a) (2) of the Act alleging that Erickson has unlawfully recognized or assisted any labor organization.

22. Thereafter, on October 15, 26, 27 and 29, 1964, Local 953 continued to picket Erickson at the construction site of the Memorial Hospital at Menomonie, Wisconsin.

23. The evidence fails to establish that there is reasonable cause to believe that an object of the picketing was for recognition, bargaining or organization.

## DISCUSSION

The only issue in the instant case is whether the picketing by Local 953, which commenced on September 21, 1964, was for an object of forcing or requiring Erickson to recognize or bar-

gain with it as the representative of his employees or to force or require the employees of Erickson to accept or select Local 953 as their collective bargaining representative. Local 953 contends that the picketing both before and after the representation election held by the Board on October 13, 1964 was solely for the legitimate object of protesting the payment of substandard benefits by Erickson.

The majority of the National Labor Relations Board has recognized that the protest of substandard benefits or wages is not proscribed by Section 8(b) (7). See Claude Everett Construction Co., 49 L.R.R.M. 1757, 136 N.L.R.B. 28; Alton-Myers Bros., 49 L.R.R.M. 1969, 136 N. L.R.B. 118.

The Board has also held, and we concur therein, that a Union is not foreclosed from picketing to protest substandard wages and benefits solely because it has initially requested a company to sign a union contract or to bargain with it. Texarcana Construction Co., 50 L.R.R.M. 1545, 138 N.L.R.B. 10.

In the instant case, Local 953 concededly requested Erickson to sign a Union contract. At the time the requests were made, as heretofore found, Erickson was paying substandard wages and benefits. Local 953 knew Erickson was so doing, and the union legitimately was concerned that as a result he had been able to underbid other contractors on construction projects in the area. Implicit in the request to Erickson for a contract was the attempt to get Erickson to raise those wages and benefits. After Erickson's unequivocal refusal to sign a contract, Local 953 made no further requests. Instead, after a hiatus of two weeks, it commenced picketing to protest the substandard benefit paid by Erickson. Thereafter, no statements were made or action taken or circumstances shown from which it could be inferred that the ostensible object as shown by the legend on the picket signs, was not in fact the true and sole object of the picketing.

## CONCLUSIONS OF LAW.

1. This court has jurisdiction of the parties and of the subject matter of this proceeding under Section 10(l) of the National Labor Relations Act.

2. Petitioner has failed to show that there is reasonable cause to believe that Local 953 has engaged in and is engaged in unfair labor practices within the meaning of section 8(b) (7) (B) of the Act.

3. The petitioner is not entitled to a temporary injunction pending final disposition of the charge herein pending before the Board.